IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KENNETH L. INMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 315-095 |
| | ) |
| SAM ZANDERS, Warden, Dodge State | ) |
| Prison, and TINA SANDERS, Deputy | ) |
| Warden of Care & Treatment, Dodge State | ) |
| Prison, | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Phillips State Prison in Buford, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events at Dodge State Prison ("DSP") in Chester, Georgia. Plaintiff is proceeding *pro se*. Before the Court is Defendant's pre-answer motion to dismiss (doc. no. 20), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

## I.  BACKGROUND

With respect to Sam Zanders and Tina Sanders, the remaining defendants in this action, Plaintiff alleges the following facts.

From October 2014 through May 2015, the administration at DSP denied Plaintiff and

other inmates "yard calls" because a few inmates had been fighting. (Doc. no. 1, p. 7-8.) Over this eight month period, inmates were given a one-hour yard call on fourteen days of the month at the most to zero days of the month at the least. (Id. at 7.) Furthermore, Hispanic inmates received four hours of yard call to celebrate Cinco de Mayo but the rest of the inmates received only one hour to celebrate three days later. (Id. at 8-9.)

Plaintiff filed grievance number 196853 on May 21, 2015, alleging he, along with the inmates in Dorm C-1, missed a single day's yard call due to a dorm lockdown on May 19, 2015. (Doc. no. 20-2, Attch. D.) On June 24, 2015, Warden Zanders evaluated and denied grievance 196853 on the ground the lockdown was justified as the entire dorm refused to be inspection ready. (Id.) Plaintiff did not appeal the denial of grievance number 196853. (Doc. no. 20-2, Ex. 1, ¶ 20.) Plaintiff filed no other grievances regarding the incidents in his complaint. (Id., ¶ 21.)

## II. DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A. The Legal Framework

Where, as here, Defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555

U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps"

in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### B. The Administrative Grievance Procedure

Because the dates of the alleged incidents are between October 2014 and May 2015, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001,

---

[1] Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

which became effective on December 10, 2012. (See doc. no. 20-2, Attch. A.) The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3). The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it. Id. § VI(D)(3), (5)(a). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § VI(D)(4). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(D)(5)(b)(2). Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(E).

### C. Plaintiff's Failure to Exhaust

Plaintiff's claim should be dismissed because he failed to appeal the denial of grievance 196853. (See doc. no. 20-2, Attch. B.) The Warden denied grievance 196853 on June 24, 2015, and Plaintiff acknowledged receipt of the denial on August 10, 2015. (See

doc. no. 20-2, Attch. D.) Plaintiff had seven calendar days from his receipt date to file an appeal to the Central Office of the Commissioner. SOP IIB05-0001 § VI(E)(2). Plaintiff never filed an appeal. (Id.; doc. no. 20-2, ¶ 20.)

Plaintiff argues any failure on his part to exhaust his administrative remedies is due to prison officials' deviation from the grievance process, which, in turn, led to "missing grievances" in Plaintiff's grievance record. (Doc. no. 25, p. 1.) Taking Plaintiff's factual allegations as true, in accordance with the first step of the Turner analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute. Turner, 541 F.3d 1082-83.

Plaintiff alleges he filed grievances regarding "no or little yard calls," but they "have not been seen after givin [sic] to counselors." (Doc. no. 25, p. 1.) DSP officials allegedly instituted a policy where (1) inmates are not given copy of an original grievance or appeal form to challenge a grievance decision; (2) grievances are systematically being dismissed cursorily as "cannot substantiate your claim;" and (3) grievances are being rewritten by counselors to look frivolous and without merit. (Id. at 2.) As proof of these practices, Plaintiff asserts grievance 196853 is missing. (Id.) Plaintiff also details problems he faced with various grievances he filed on unrelated issues. (Id. at 2-3.)

Defendants have provided evidence the grievance process was fully available to Plaintiff at all relevant times, and Plaintiff was well-practiced in utilizing it. Plaintiff's grievance history shows he filed five grievances while housed at DSP, including two during the time of the alleged incidents between October 2014 and May 2015, all of which officials processed in a timely fashion. (See doc. no. 20-2, Attch. B.) Defendant has also produced

the affidavit of Kelvin Washington, a Counselor at DSP, detailing the grievance process. (See doc. no. 20-2, Ex. 1.) According to Mr. Washington, a prison counselor must give any grievance submitted by a prisoner to the Grievance Coordinator to screen in order to determine to accept the grievance or recommend the Warden reject it. (Id. at ¶¶ 9-10); see also SOP IIB05-0001 § VI(D)(3), (5)(a). If the Grievance Coordinator recommends denial, she must submit the grievance to the warden for approval. (Doc. no. 20-2, Ex. 1, ¶ 12.) If the Warden rejects the grievance, the prisoner is given a copy of the Warden's decision and he may appeal the rejection to the Central Office. (Id. at ¶ 13.)

Plaintiff provides no evidence this procedure was not followed in his case. Despite Plaintiff's claim to the contrary, grievance 196853 is not missing; Defendants attached it to their motion to dismiss. (See doc. no. 20-2, Attch. D.) Defendant's attachment details DSP officials' investigation of the facts surrounding the grievance, and contains Warden Zanders's ultimate denial of it. (Id.) Plaintiff acknowledged receipt of the denial on August 10, 2015, yet failed to appeal. (Id.; doc. no. 20-2, ex. 1, ¶ 20.) Indeed, Defendants' attachment shows the grievance process was followed to the letter in processing grievance 196853.

Furthermore, Defendants have produced the affidavit of Nikki Fuqua, the Grievance Coordinator as DSP, who testified that neither she nor any other counselor at DSP has failed to deprive Plaintiff of the grievance process. (See doc. no. 27, ex. 1.) Ms. Fuqua specifically testified she received no grievance from Plaintiff that was not "duly recorded, processed, and responded to in accordance with the SOP," nor did she remember "any grievances from [Plaintiff] being lost, misdirected, or otherwise mishandled by any other staff at DSP." (Id.

7

at ¶ 3.) Ms. Fuqua also testified Plaintiff has never filed a grievance related to failures or malfunctions in the grievance process at DSP. (Id. at ¶ 4.) Plaintiff provides no detailed description of grievances related to lack of yard calls that were lost, missing, or not processed to rebut this sworn testimony from Ms. Fuqua. (See generally doc. nos. 25, 28.)

Finally, Plaintiff's allegations regarding difficulties with processing of unrelated grievances do not undermine the efficacy of the grievance process. Indeed, Plaintiff's own statements fail to show his grievances were not correctly processed. (See doc. no. 25, p. 2-3.) By Plaintiff's own admission, grievance 192470 was denied because his claims "could not be substantiated," a valid reason for denial. Ms. Fuqua's alleged failure to interview a single inmate witness regarding grievance 144999 also does not undermine the grievance process, as there is nothing to indicate she otherwise conducted a thorough investigation. Finally, Plaintiff's claim "I believe [grievance 144511] was rewrote to justify being dismissed" is not supported by any evidence and is mere speculation. Therefore, Plaintiff offers no tangible proof to support his assertion he filed grievances regarding lack of yard calls that were not processed.

In the alternative, Plaintiff argues he need not comply with the administrative remedies where it would be futile, citing McCarthy v. Madigan, 503 U.S. 140 (1992). (Doc. no. 25, p. 3.) However, "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA." Alexander, 159 F.3d at 1325; see also Smith, 491 F. App'x at 83 ("Because exhaustion is now a pre-condition to suit, courts lack discretion to waive the exhaustion requirement.") (internal quotations omitted). Therefore, even if Plaintiff made a "reasonable effort to exhaust administrative

8

remedies," that is not enough. (See doc. no. 28, p. 1.) Because the grievance procedure was fully available to Plaintiff, as discussed in detail above, and the Court cannot excuse his failure to properly utilize it. See Smith, 491 F. App'x at 83; Alexander, 159 F.3d at 1325.

As Plaintiff failed to appeal his grievance within the administrative deadline, it does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendant's motion to dismiss should be granted. In light of the Court's conclusion Defendant's motion to dismiss should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendant's additional arguments.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED** (doc. no. 20) and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 7th day of February, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA